**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22 C 3044 |
| v. | ) | |
| | ) | Judge Elaine Bucklo |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO THE CITY DEFENDANT'S MOTION TO DISMISS**

Comes now Plaintiff, James Allen, by and through counsel, and for his response to the

Motion to Dismiss Plaintiff's Second Amended Complaint (dkt. 103) filed by Defendants City of

Chicago, and Geri Yanow, Special Representative of the Estates of Michael Pochordo and

George Rotkovich, deceased, (collectively, the "City Defendants") states as follows:

**INTRODUCTION**

In the 1980s, the Defendants in this case framed James Allen for two murders he did not

commit. This case seeks justice for the second of those wrongful convictions, even as Mr. Allen

continues his fight for exoneration on the first.

Mr. Allen's Second Amendment Complaint ("SAC") alleges—among other constitutional

and state tort law violations—that Defendants fabricated evidence, coerced Mr. Allen into

incriminating himself, and knowingly withheld evidence that a different person had confessed to

the crime. A jury bought the make-believe story the Defendants sold and convicted Mr. Allen of

murder and armed robbery. It took Mr. Allen nearly 35 years to finally clear his good name.

The City Defendants move to dismiss, arguing that Mr. Allen lacks standing to sue and

otherwise has no legal basis for his claims because of his separate incarceration pursuant to the

still-valid first murder conviction. This argument not only lacks merit, but it borders on the

frivolous. Mr. Allen's incarceration pursuant to the first conviction very well may reduce his damages, but Defendants still deprived him of rights and liberties to which he was entitled under the Constitution. Mr. Allen suffered real harm as a result. Mr. Allen is accordingly entitled to proceed with his suit for damages based on his wrongful conviction, notwithstanding the City Defendants' arguments that those damages are limited by the fact of his other conviction.

## BACKGROUND

In 1987, Mr. Allen was wrongfully convicted of armed robbery and murder relating to the 1984 death of Robert Ciralsky, Sr., and received a sentence of life imprisonment. (Dkt. 46, SAC ¶¶ 2–3.) Mr. Allen maintained his innocence, and thirty-fours years later, in 2021, he was finally exonerated. (*Id.* ¶¶ 138–43.) But Mr. Allen is not yet free. At the time of his conviction in the Ciralsky murder, Mr. Allen was already serving a life sentence for the 1984 murder of Carl Gibson. (*Id.* ¶¶ 13, 13 n.2, 33.) Mr. Allen alleges that many of those named as Defendants in this case used similar illegal tactics as are at issue here to obtain the Gibson conviction, and post-conviction proceedings to prove his innocence remain ongoing in state court. (*Id.* ¶¶ 33–34, 107–17.) This case is not connected to those proceedings. Here, Mr. Allen only seeks vindication for the constitutional rights violations Defendants caused during the Ciralsky case.

Mr. Allen alleges that the Ciralsky case was a sham through and through. Defendants—including now-deceased former Chicago Police Detective Michael Pochordo and the other individual Defendants named in the SAC—depended on a career criminal and jailhouse snitch who had a known reputation for untruthfulness, Darryl Moore, to "identify" Mr. Allen as a perpetrator of the murder. (*Id.* ¶ 5, 34.) The first time Defendants interrogated Mr. Allen, in December 1985, they tried to feed him a false narrative about the crime. (*Id.* ¶¶ 35–41.) When Mr. Allen denied involvement, Pochordo later falsely testified that Mr. Allen had, in fact,

cooperated. (*Id.* ¶ 41.) When Mr. Allen continued to refuse to cooperate at a second interrogation ten days later, Pochordo used psychological coercion and threats of the death penalty to compel Mr. Allen to do Defendants' bidding. (*Id.* ¶¶ 42–46.) All Mr. Allen had to do was "tell the truth"—but, Pochordo confirmed, "telling the truth" meant confirming the false narrative Defendants provided Mr. Allen in his first interrogation. (*Id.* ¶ 41.) Succumbing to duress, Mr. Allen agreed and implicated himself in the murder. (*Id.* ¶ 46.)

As part of the terms of this corrupt and coerced "deal," Defendants required Mr. Allen to incriminate himself and others as directed by Defendants—even though Mr. Allen knew he was innocent of the crime and had no reason to believe the other "suspects" identified by Defendants were involved. (*Id.* ¶¶ 56–65.) Defendants worked to similarly coerce and induce other witnesses to provide the same fabricated story as Mr. Allen to the grand jury, including by making tens of thousands of dollars in undisclosed payments to Moore in exchange for testimony. (*Id.* ¶¶ 47–55, 60–73.) Also as part of the "deal," Defendants made arrangements to move Mr. Allen to a different place of incarceration because a bounty had been placed on his life due to the perception that he was cooperating with law enforcement. (*Id.* ¶ 57.)

For a time, everything worked as Defendants' planned. Defendants made sure that Mr. Allen and the other witnesses provided the fabricated grand jury testimony as directed, and Mr. Allen and others were indicted as intended. (*Id.* ¶¶ 59–66.) But things fell apart when Moore recanted his testimony, prompting Mr. Allen and another witness to follow suit and reveal that their grand jury testimony had been obtained through undue coercion. (*Id.* ¶¶ 63–66.) Many of the indictments obtained on the basis of this testimony were dismissed—but not the charges against Mr. Allen. (*Id.* ¶ 66.) Mr. Allen was then tried and convicted of the Ciralsky murder in August 1987. (*Id.* ¶ 74.) His conviction rested on the testimony of Pochordo and a prosecutor

3

who testified (but is unnamed in the SAC), Mr. Allen's false and coerced confession, and the false grand jury testimony provided to Mr. Allen by Defendants. (*Id.* ¶ 80.)

None of this was necessary. By late 1985, Defendants knew that a different individual coincidentally named James "Kirby" Allen had confessed to the Ciralsky murder and identified his accomplice as Robert Langford. (*Id.* ¶ 75.) Langford later confirmed that that he and Kirby had murdered Ciralsky. (*Id.* ¶¶ 81–84.) Moreover, in early 1986, Defendants had actually interrogated Langford—and Pochordo told Langford "that he wanted to intentionally frame [Mr. Allen] for the Ciralsky murder as [Mr. Allen] was involved in a 1969 robbery that resulted in the death of a CPD officer." (*Id.* ¶ 85.) Not only did Defendants continue to prosecute Mr. Allen, but they also knowingly withheld all such exculpatory evidence relating to Kirby and Langford from Mr. Allen's defense attorneys ahead of trial. (*Id.* ¶¶ 75, 81–84.) Langford's information would not come to light until he executed a series of affidavits decades later. (*Id.* ¶ 81.)

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). At this stage, the court must accept all well-pleaded facts as true and draw reasonable inferences in Plaintiff's favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564-65 (7th Cir. 2016). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility" does not mean the Court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the complaint must merely "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

4

(emphasis in original). A complaint need only allege a plausible claim and is not required to "contain all legal elements (or factors) plus facts corresponding to each" that the plaintiff will eventually need to prove. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024) (quoting *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017)).

## ARGUMENT

### I.     Mr. Allen has Article III Standing to Bring His Claims

Defendants have arguments for limiting Mr. Allen's damages, but there is no merit to their contention that his wrongful conviction caused him zero damages to the point of depriving him of standing to pursue redress for an injury. A plaintiff has standing to sue under Article III of the Constitution if he has suffered "(1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). As a result, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (cleaned up).

Mr. Allen easily clears this hurdle. As alleged in the SAC, Mr. Allen in fact suffered concrete and particularized injuries—separate and distinct from the consequences of his incarceration in the Gibson case—including "loss of liberty, mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and severe damages."

5

(SAC ¶¶ 152, 161, 170, 176, 183.) He suffered these injuries as a direct result of Defendants' violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments in the Ciralsky case. (*Id.* ¶¶ 144–202.) These injuries are redressable through a court order of compensatory and punitive damages. That is enough to establish of standing at the pleading stage. *See Prairie Rivers*, 2 F.4th at 1008.

The City Defendants argue that Mr. Allen's incarceration for the Gibson murder renders him unable to show standing, relying on Fourth Amendment unlawful detention cases holding that "a section 1983 plaintiff may not receive damages for time spent in custody, if that time was credited to a valid and lawful sentence." *Patrick v. City of Chicago*, 81 F.4th 730, 737 (7th Cir. 2023) (quoting *Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017)); *see also Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013); *Ramos v. City of Chicago*, 716 F.3d 1013, 1020 (7th Cir. 2013). Because federal courts may not award damages for time spent lawfully in custody, a plaintiff's injury resulting from time spent validly detained is not redressable in federal court. *See Patrick*, 81 F.4th at 737 (holding that a plaintiff cannot "seek damages related to [their lawful] detention and therefore to this extent has no injury that a favorable decision by a federal court may redress.") (quoting *Ewell*, 853 F.3d at 917).

But damages related to imprisonment are only one variety of injury a plaintiff may suffer as a result of a wrongful conviction. A plaintiff may lose his liberty in different ways than contemplated by the lawful detention. *See Ramos*, 716 F.3d at 1019–20; *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562–64 (2024). And liberty aside, it is well-established that Section 1983 plaintiffs—in both the due process and unlawful detention contexts—may seek mental and emotional distress damages resulting from the constitutional violation. *See Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); *Guzman*

6

*v. City of Chicago*, 689 F.3d 740, 748 (7th Cir. 2012); *Horina v. City of Granite City*, 538 F.3d 624, 637 (7th Cir. 2008). Because such mental or emotional injuries are distinct and separate from the lawful detention and its consequences, they are redressable in federal court.

Mr. Allen plainly alleges that he experienced such injuries distinct from his incarceration in the Gibson case. (SAC ¶¶ 152, 161, 170, 176, 183.) The extent of Mr. Allen's injuries and corresponding damages might be less than they would be if he were not incarcerated pursuant to the Gibson conviction. That does not mean, however, that Mr. Allen suffered no injury at all as a result of the Defendants' violations of his rights, or that such injury is not redressable by the court. Mr. Allen has standing to bring his claims.

## II. Mr. Allen has Adequately Plead Deprivations of Liberty to Support His Fourth Amendment and Due Process Claims

Defendants next attack the legal sufficiency of Mr. Allen's Fourth Amendment unlawful detention without probable cause[1] and Fourteenth Amendment due process claims, returning again and again to the same refrain that Mr. Allen cannot allege a deprivation of liberty as required to state a claim under either amendment. These arguments misconstrue the law and ignore key portions of the SAC. Mr. Allen has, in fact, plausibly alleged that Defendants' misconduct deprived him of his liberty under both amendments.

### A. Mr. Allen has plausibly alleged that he was "seized" within the meaning of the Fourth Amendment

Mr. Allen has alleged sufficient facts to state a claim for relief under the Fourth Amendment. The basic elements of a Fourth Amendment deprivation of liberty without probable cause claim are straightforward: a plaintiff must show (1) an unreasonable "seizure" that is (2)

---

[1] To clarify any confusion (*see* dkt. 103 at 7 n.2), Mr. Allen brings his unlawful detention without probable cause claim under the Fourth and Fourteenth Amendments because the Fourth Amendment is "applicable through the Fourteenth Amendment to the States." *Bailey v. United States*, 568 U.S. 186, 192 (2013).

without probable cause. *See Chiaverini*, 602 U.S. at 558; *Manuel v. City of Joliet*, 580 U.S. 357, 364–65 (2017). A seizure within the meaning of the Fourth Amendment "can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Hess v. Garcia*, 72 F.4th 753, 763 (7th Cir. 2023) (quoting *Torres v. Madrid*, 592 U.S. 306, 311 (2021). Because Mr. Allen was forced to undergo a coercive interrogation, give incriminating false testimony to a grand jury, enter protective custody, and appear in court for trial even though Defendants knew that the evidence against him was entirely fabricated, he was seized multiple times separate and apart from his incarceration for the Gibson conviction. (SAC ¶¶ 43–46; 56–57, 74–79; *id.* at 15.) At no point did Defendants have probable cause to support these Fourth Amendment seizures. Accordingly, Mr. Allen has plausibly alleged a Fourth Amendment claim.

In opposition, the City Defendants present a long string-cite of out-of-circuit malicious prosecution cases to suggest that an "already incarcerated" plaintiff categorically cannot establish the necessary "deprivation of liberty" to support a Fourth Amendment claim. (Dkt. 103 at 8–9.) At the outset, these cases do not establish such a categorical rule as neatly as the City Defendants suggest. *See Curry v. Yachera*, 835 F.3d 373, 380 n.15 (3d Cir. 2016) (describing that the plaintiff "has not alleged any facts that he was seized" and "leav[ing] open the possibility that a set of facts could exist where an already imprisoned plaintiff can demonstrate a seizure sufficient for a malicious prosecution claim"); *Allen v. City of New York*, 480 F. Supp. 2d 689, 717–18 (S.D.N.Y. 2007) (allowing malicious prosecution claim to proceed despite incarceration where plaintiff argued that he was seized because "his overall prison term was effectively lengthened").

Furthermore, whatever persuasive value these cases have, they were abrogated by the Supreme Court's recent decision in *Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024). *Chiaverini* holds that no such categorical rule as advanced by the City Defendants controls, and

8

that courts should evaluate Fourth Amendment unlawful detention cases "charge by charge"—meaning that a plaintiff who is validly detained on the one hand is not automatically barred from pursuing a malicious prosecution claim related to a separate, invalid charge. *Id.* at 562–63. Thus, for example, "if an invalid charge—say, one fabricated by police officers—causes a detention to either start or to continue, then the Fourth Amendment is violated." *Id.* at 563. Such approach accords with existing guidance advising "'caution in approaching claims that the Fourth Amendment is inapplicable' as a categorical rule in a particular context." *Henry v. Hulett*, 969 F.3d 769, 777 (7th Cir. 2020) (quoting *Hudson v. Palmer*, 468 U.S. 517, 525 (1984)).

Additionally, the City Defendants' assertion that "incarceration by a valid conviction extinguishes a plaintiff's protected liberty interests under the Fourth Amendment" does not accurately reflect the law. To the contrary, "[n]o 'iron curtain' separates prisons from the Constitution" and incarcerated people must "be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration"—including such Fourth Amendment rights as are "justifiable" or "reasonable." *Id.* at 778 (citation omitted); *see also Bell v. Wolfish*, 441 U.S. 520, 545–46 (1979). Taken as a whole, this precedent provides that an incarcerated plaintiff retains a right not to be seized in a manner beyond the scope of his incarceration, and, in the unusual circumstances when such a seizure occurs, that plaintiff may sue under the Fourth Amendment not withstanding his existing conviction.

In this case, Mr. Allen has alleged sufficient facts to plausibly state a Fourth Amendment deprivation of liberty without probable cause claim. Here, contrary to the City Defendants' assertions, Mr. Allen does not merely allege that he was questioned in prison and then required to go to trial. *See United States v. Childs*, 277 F.3d 947, 950–51 (7th Cir. 2002). Instead, Mr. Allen alleges that at his second interrogation, he refused to give a statement or cooperate, and that

9

Pochordo then used psychological coercion to compel his cooperation. (SAC ¶¶ 43–46.) Then, pursuant to this cooperation obtained through coercion, Mr. Allen was required to give false and self-incriminating testimony before a grand jury, and he was transferred to a different facility for his protection. (*Id.* ¶¶ 56–57.) Ultimately, he was indicted based on the false grand jury testimony and forced to stand trial. (*Id.* at 15,[2] ¶¶ 74–79.)

On each of these occasions, Defendants made a show of authority when they required Mr. Allen to endure coercion in the interrogation room despite his stated refusal to cooperate; required Mr. Allen to give testimony before the grand jury; transferred Mr. Allen to a different facility because the cooperation he was forced to give made his previous place of incarceration too dangerous; and haled him into court for trial despite their knowledge that Mr. Allen had not committed the crime in question.[3] Mr. Allen acquiesced to all such shows of authority. None of these seizures bore any relation whatsoever to his incarceration for the Gibson conviction, nor did they advance any meaningful penological purpose. But for Defendants' misconduct, none of these seizures would have happened. And Defendants—who knew Mr. Allen had not committed the Ciralsky murder—lacked probable cause for any of them. Mr. Allen has more than provided the factual allegations needed to plausibly allege his Fourth Amendment claim.

---

[2] An inadvertent numbering error appears to have caused two different sets of paragraphs to be numbered 63–66 on pages 14 and 15 of the Second Amendment Complaint.

[3] Although the Seventh Circuit generally holds that "[r]equirements to appear in court" do not constitute a seizure within the meaning of the Fourth Amendment, *Smith v. City of Chi.*, 3 F.4th 332, 341 (7th Cir. 2021), *vacated on other grounds by* 142 S. Ct. 1665 (2022), this case presents unique circumstances that differ from the general analysis. By the time the case went to trial, Mr. Allen alleges that Defendants well knew he was not involved in the Ciralsky murder and could have stopped the whole charade. They did not and haled Mr. Allen into court anyway. Such a patently unreasonable action strongly resembles the kind of show of authority and control that the Seventh Circuit associated with a seizure in *Smith*. *Id.* at 341.

In short, Mr. Allen's damages may be diminished because of his incarceration for the Gibson conviction. But as courts recognize, "brief seizures are seizures all the same," *Torres*, 592 U.S. at 318, and Mr. Allen is entitled to seek compensatory damages for such seizures. *See Guzman v. City of Chicago*, 689 F.3d at 748.

**B.** **Mr. Allen has plausibly alleged that he suffered a deprivation of liberty within the meaning of the Fourteenth Amendment**

Mr. Allen has also stated sufficient facts to plausibly allege his due process claims, including fabrication of evidence and suppression of evidence. The City Defendants do not dispute that the SAC sets out the factual predicates needed to plausibly show that they fabricated and suppressed evidence. Instead, the City Defendants argue that Mr. Allen has not suffered any "deprivation of liberty" as required to state a valid fabrication or *Brady* claim because he was incarcerated for the Gibson murder at all relevant times. But this argument ignores that "[t]he right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment" to which all criminal defendants are entitled. *Estelle v. Williams*, 425 U.S. 501, 503 (1976); *see also Wilber v. Hepp*, 16 F.4th 1232, 1251 (7th Cir. 2021) ("a fair trial, after all, is what the Due Process Clause of the Fourteenth Amendment above all else guarantees") (quoting *Kentucky v. Whorton*, 441 U.S. 786, 790 (1979) (Stewart, J., dissenting)). Mr. Allen alleges that Defendants' due process violations at his trial for the Ciralsky murder, including the fabrication and suppression of evidence, deprived him of this bedrock liberty interest to which he was entitled. (SAC ¶¶ 164, 168.) Section 1983 may not permit recovery when fabricated or suppressed evidence never actually comes into play, or when a defendant is acquitted despite the trial being unfair—but the law leaves no doubt that a plaintiff whose wrongful conviction was marred by fabricated or suppressed evidence has a Section 1983 claim for damages. *See, e.g.*, *Patrick v. City of Chi.*, 974 F.3d 824, 835 (7th Cir. 2020); *Armstrong v. Daily*, 786 F.3d 529, 553–55 (7th Cir. 2015).

11

Separately, the Due Process Clause also protects a criminal defendant's interest in his reputation. *See, e.g.*, *In re Winship*, 397 U.S. 358, 363–64 (1970) ("The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt.") Although reputational interests are generally not protected from defamatory statements of government officials through Section 1983, *see generally Paul v. Davis*, 424 U.S. 693 (1976), a criminal conviction is not a defamatory statement. It is a binding adjudication by a jury of one's peers of factual and moral blameworthiness for serious violations of the social compact. *See In re Winship*, 397 U.S. at 363–64. Accordingly, the Constitution protects a criminal defendant from being subjected to such condemnation without due process.

Furthermore, Mr. Allen alleges deprivation of a constitutionally-protected interest in his reputation even if the court determines that the "stigma plus" test used to determine when reputational interests have constitutional import applies. Under the stigma plus theory, a plaintiff alleges the deprivation of a protected liberty interest if he experienced "an injury to [his] reputation" plus "a change in legal status." *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024). Mr. Allen experienced both. His reputation was harmed in that he was branded a murderer of Robert Ciralsky, Sr. (SAC ¶ 79.) In like fashion, his legal status changed from someone presumed innocent to someone adjudicated guilty. This change had serious legal consequences, as evidenced by Mr. Allen's long, uphill battle to prove his innocence. (*Id.* ¶¶ 138–41.) Thus, even if Mr. Allen's incarceration for the Gibson murder prevents him from claiming that he was imprisoned as a result of the Ciralsky conviction, he still had a meaningful liberty interest at

stake. Defendants' fabrication and suppression of evidence deprived him of this interest in his reputation without due process of law, and Mr. Allen is entitled to seek damages for the "humiliation" and "degradation" he suffered as a result. (SAC ¶ 170.)

### III.    Mr. Allen has Plausibly Alleged His False and Coerced Confession Claim

Next, Mr. Allen has sufficiently alleged his false and coerced confession claims under the Fifth and Fourteenth Amendments. Beginning with Mr. Allen's allegations that Defendants' misconduct deprived him of his right to be free from self-incrimination, the City Defendants once again do not contest that Mr. Allen has alleged sufficient factual predicates to plausibly state a coerced confession claim. Instead, the City Defendants again argue that Mr. Allen suffered no deprivation of liberty as a result of the violation because of his incarceration for the Gibson murder. (Dkt. 103 at 12–13.) As explained in the previous section, however, Mr. Allen had protected liberty interests in receiving a fair trial and his good name separate and apart from his interest in avoiding incarceration. Furthermore, because the Constitution explicitly protects the right against self-incrimination in the Fifth Amendment (as applied to the states by the Fourteenth Amendment), Mr. Allen had a protected liberty in this right. *See* U.S. Const. amend. V; *Domka v. Portage Cty.*, 523 F.3d 776, 780 (7th Cir. 2008) ("Liberty interests can arise from two sources: the Federal Constitution or state law."). Accordingly, in alleging that Defendants violated his right to be free from self-incrimination by using his coerced confession at trial (*see* SAC ¶¶ 144–53), Mr. Allen adequately alleged deprivation of a liberty interest and plausibly stated a claim for relief. *See Jackson v. Curry*, 888 F.3d 259, 265 (7th Cir. 2018) (a Self-Incrimination Clause violation compensable under Section 1983 occurs when the government "us[es] coerced confessions at pre-trial hearings or trials in criminal cases.").

13

As for Mr. Allen's substantive due process claim, he has pleaded sufficient facts to state a claim. The Seventh Circuit recognizes a Fourteenth Amendment substantive due process claim to remedy situations "involving conscience-shocking interrogation tactics." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010). The question of whether an interrogation tactic rises to the conscience-shocking level, however, is highly fact-dependent and turns on "whether the conduct is 'too close to the rack and the screw.'" *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). Here, Mr. Allen alleges that Defendants engaged in conscience-shocking tactics based on the application of "extreme psychological coercion" based in part on Pochordo wielding the death penalty against Mr. Allen—credibly, given Pochordo's role in helping obtain the Gibson conviction—to compel Mr. Allen's participation in a scheme to incriminate himself and fabricate testimony for use against others. (SAC ¶¶ 33, 42–46, 56, 65, 146.) Such allegations suffice to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S at 555 (quotation marks and ellipsis omitted), and "give enough details about the subject-matter of the case to present a story that holds together," *Swanson*, 614 F.3d at 404. That is enough at this early stage of the litigation.

The City Defendants, however, argue that Mr. Allen's claims should be dismissed because the SAC fails to satisfy the high evidentiary threshold required to prove such claims. (Dkt. 103 at 13–14.) In support, the City Defendants cite a series of cases analyzing conscious-shocking interrogation tactics on summary judgment or following trial—in other words, after a supporting factual record has been fully developed. *See Hurt v. Wise*, 880 F.3d 831, 844 (7th Cir. 2018); *Cairel v. Alderden*, 821 F.3d 823, 833–34 (7th Cir. 2016); *Olson v. Cross*, 714 F. Supp. 3d 1034, 1058 n.17 (N.D. Ill. 2024). Indeed, the City Defendants even try to bring the summary judgment evidentiary standard into the analysis, directing the court to view Mr. Allen's

14

allegations "in a light most favorable to the Plaintiff"—rather than use the motion to dismiss standard, which requires the court to accept all well-pleaded facts as true and draw reasonable inferences in Plaintiff's favor. *Roberts*, 817 F.3d at 564-65. This is inappropriate. Without the development of the record and presentation of evidence, it is far too early in the case for the court to determine whether Defendants' conduct amounted to mere "ordinary interrogation tactics" or conscience-shocking psychological abuse—or for the court to guess what it thinks the evidence will show. Mr. Allen is well aware of the steep hill he will need to climb to prove his substantive due process claim, and he anticipates the issue will be hotly contested at summary judgment. But the case is not there yet. Mr. Allen has plausibly alleged a substantive due process violation in a manner that gives Defendants fair notice, and accordingly this claim should survive the City Defendants' motion to dismiss.

**IV.     The Court Should Not Dismiss Mr. Allen's Other Section 1983 or State Law Claims**

Finally, Defendants argue that if the court dismisses Mr. Allen's claims under the Fourth, Fifth, and Fourteenth Amendments, it should also dismiss Mr. Allen's remaining Section 1983 conspiracy, failure to intervene, and *Monell* policy and practice claims, and decline to exercise supplemental jurisdiction over the remaining state law claims. Because Mr. Allen has adequately pleaded constitutional violations as described above, his conspiracy, failure to intervene, and *Monell* claims should also survive. And as long as the court accordingly retains federal question jurisdiction over these constitutional claims, it should continue to exercise supplemental jurisdiction over the state law claims as well.

**CONCLUSION**

For the foregoing reasons, Mr. Allen respectfully requests that the court deny the City Defendants' Motion to Dismiss the Second Amended Complaint.

15

Respectfully submitted,

/s/ Aaron M. Tucek
One of Plaintiff's Attorneys

*Counsel for Plaintiff*
Jon Loevy
Aaron Tucek
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
jon@loevy.com
aaron@loevy.com

## Certificate of Service

I, Aaron Tucek, an attorney, hereby certify that on December 17, 2024, I served the foregoing brief on all counsel of record electronically by filing it via CM/ECF.

/s/ Aaron M. Tucek

16