```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
```

| | | |
|---|---|---|
| James Allen, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 22 C 3044 |
| | ) | |
| | ) | |
| CITY OF CHICAGO, Special Representative Of the Estate of Former Chicago Police Detective MICHAEL POCHORDO, Deceased, Special Representative of the Estate Of Former Chicago Police Detective GEORGE ROTKVICH, JR., deceased, and Former Chicago Police Sergeant JOHN E. TOENINGS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

Order

In August of 1987, plaintiff James Allen was convicted of the August 1, 1984, murder of a man named Robert Ciralsky. In 2021, the Circuit Court of Cook County vacated that conviction and remanded for a new trial after concluding that Mr. Allen had made a substantial showing of constitutional violations that likely affected the outcome of the proceedings. The Cook County State's Attorney elected not to retry Mr. Allen, and the charges against him relating to the Ciralsky murder were dismissed. But Mr. Allen remains incarcerated because at the time he was charged with the Ciralsky murder, he was already serving

1

a life sentence for the June 21, 1984, murder of a man named Carl Gibson. Although Mr. Allen insists that he is innocent of that crime as well, his post-conviction proceedings to vacate the judgment in that case have been unsuccessful (though they remain ongoing), so his conviction stands. In this action, he seeks to recover damages exclusively for injuries he suffered as a result of his now-vacated conviction for the murder of Robert Ciralsky.

In his Second Amended Complaint ("SAC"), plaintiff claims that he was framed for the Ciralsky murder in retaliation for his participation in a 1969 robbery that resulted in the death of a Chicago Police officer. Specifically, plaintiff alleges that defendant Pochordo, a Chicago Police Detective, fabricated a story incriminating plaintiff in Ciralsky's murder, then coerced him—despite his insistence that he had no knowledge of the crime—into confessing to his involvement. Pochordo also allegedly bribed a "jailhouse snitch" named Darryl Moore to finger plaintiff for the Ciralsky murder and to provide false grand jury testimony consistent with Pochordo's fictitious narrative. According to plaintiff, defendants Pochordo and then-Assistant State's Attorney Beuke knew as early as 1985 that a different individual also named James Allen (but who went by the nickname "Kirby") had confessed that he (Kirby) and one Robert Langford were responsible for the Ciralsky murder.[1] These defendants also knew, plaintiff alleges, that in 1986,

---

[1] Langford corroborated Kirby's confession years later in a series of affidavits he executed between 2010 and 2018.

2

Moore recanted substantial portions of his grand jury testimony implicating plaintiff in the Ciralsky murder and admitted in pretrial proceedings that all of the information he had given the grand jury about plaintiff's involvement in the murder had come from Pochordo. Nevertheless, defendants continued to prosecute plaintiff through his conviction in August of 1987.

The Second Amended Complaint asserts a total of eleven constitutional and state claims against the City of Chicago and three of its police officers (the "City Defendants")[2] and against Cook County and two of its former employees.[3] Counts I-V assert constitutional claims against the individual City and County defendants pursuant to 42 U.S.C. § 1983. Count I, captioned "False Confession," claims that these defendants violated the Fifth and Fourteenth Amendments by coercing plaintiff to confess falsely to his involvement in Ciralsky's murder. Count II, captioned "Deprivation of Liberty Without Probable Cause," claims that they violated the Fourth and Fourteenth Amendments by using false and fabricated evidence as a basis for depriving plaintiff of his liberty and for instigating and pursuing judicial proceedings against

---

[2] Two of these officers are now deceased, and Geri Yanow, as Special Representative of their respective estates, now defends the claims against them. For clarity, however, I continue to refer to these officers by name when discussing the claims against their estates or arguments raised on their behalf.

[3] The County has answered the complaint, and its individual former employees, former Assistant States Attorney Richard Beuke and former CCSO Office Investigator Norfie DiCiolla, have appeared in the case through counsel but have not answered or otherwise pled to the Second Amended Complaint.

him. Count III, captioned "Due Process," claims that they manufactured and solicited false documents and testimony that was used to convict plaintiff in violation of his Fourteenth Amendment right to due process and a fair trial. Count IV seeks to hold the individual defendants liable for failing to intervene to prevent the violation of his constitutional rights. And Count V asserts a conspiracy among the individual defendants to deprive plaintiff of his constitutional rights. Count VI asserts a *Monell* claim against the City of Chicago, claiming that City policies, practices, and customs caused the constitutional violations the complaint describes. Counts VII through XI are state law claims for intentional infliction of emotional distress, malicious prosecution, civil conspiracy, indemnification, and vicarious liability.

Two motions to dismiss are pending. In one, the City Defendants argue that the complaint should be dismissed in its entirety because plaintiff has not suffered a cognizable injury and thus lacks Article III standing to pursue his federal claims.[4] For similar reasons, these defendants contend, plaintiff cannot prove the elements of either injury and causation, both of which are required to establish the constitutional claims he asserts. And with no viable federal claims, the City Defendants ask me to relinquish supplemental jurisdiction over

---

[4] The City Defendants seek dismissal on this basis pursuant to Fed. R. Civ. P. 12(b)(6), but it is Rule 12(b)(1) that governs motions to dismiss for lack of Article III standing.

4

plaintiff's state claims. In a separate motion, former Chicago Police Sargeant John Toenings seeks dismissal on the ground that the complaint fails to suggest plausibly that he was personally involved in the alleged constitutional violations. For the reasons that follow, the City Defendants' motion is denied and defendant Toenings' motion is granted.

I begin with the City Defendants' motion, whose overarching theme is that because plaintiff's conviction for the Gibson murder—for which he is serving a life sentence—remains valid, he lacks standing to assert a damages claim under § 1983 cannot establish the "deprivation of liberty" his claims require. This argument rests on the Seventh Circuit's observation that "a section 1983 plaintiff may not receive damages for time spent in custody, if that time was credited to a valid and lawful sentence." *Patrick v. City of Chicago*, 81 F.4th 730, 737 (7th Cir. 2023) (alteration removed) (quoting *Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017), and citing *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) and *Ramos v. City of Chicago*, 716 F.3d 1013, 1020 (7th Cir. 2013)). Plaintiff acknowledges that under these cases, he may not seek damages for any "time spent in custody" that he would have spent regardless of his prosecution for the Ciralsky murder. But because he alleges injuries that go beyond merely his "time in custody," these cases do not compel the conclusion that he has not suffered a redressable injury.

Indeed, plaintiff claims that each of the constitutional violations he alleges caused him to suffer, among other things, "loss of liberty, great mental anguish, humiliation, degradation, [and] emotional pain and suffering." SAC at ¶¶ 152, 161, 170, 176, 183. Focusing first on the mental and emotional injuries plaintiff describes, one may reasonably suppose that an incarcerated plaintiff who believes he was wrongly convicted of *two* crimes suffers these sorts of injuries to a greater extent than if he were wrongly convicted of one crime. Indeed, as Mr. Allen's situation illustrates, such a plaintiff must wage legal battles on two fronts if he seeks to vindicate his rights and establish his innocence, with each likely to entail the uncertainties, disappointments, and vicissitudes that commonly characterize post-conviction proceedings and wreak havoc on litigants' mental and emotional well-being.

Even the City Defendants' authorities recognize that damages for "mental and emotional distress" are available under § 1983 to compensate for injuries caused by the deprivation of constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 262 (1978); *see also Ewell v. Toney*, 853 F.3d at 918 (acknowledging that the plaintiff might have suffered compensable damages for "emotional injury or nominal damages independent of the time already credited to her criminal sentence," but that qualified immunity barred her claims for these injuries). Judge Wood's concurrence in *Bridewell* drove this point home in the context of a procedural due process claim, noting that "the right to procedural due process is

6

'absolute,'" and that "damages for emotional distress attributable to the deficiencies in procedure are possible, if the person can 'convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself.'" 730 F.3d at 681 (quoting *Carey*, 435 U.S. at 266, 263) (Wood, J., concurring). Here, the SAC's allegations are sufficient to allow plaintiff to marshal evidence to show that he suffered such injuries as a result of the due process violations he claims.

The SAC also pleads a plausible violation of plaintiff's liberty interests under both the Fourth and Fifth Amendments. Plaintiff alleges that after he testified falsely to a grand jury, incriminating both himself and others with the made-up story that Pochordo and Beuke fed him, he was transferred to a different prison because "a bounty had been placed on his life due to the perception that he was cooperating with law enforcement." SAC at ¶ 57. These allegations plausibly suggest that as a result of defendants' fabrication, coercion, and knowing use of false evidence, plaintiff's confinement became more onerous and restrictive than it would have been had he been incarcerated for the Gibson murder alone. Nothing in the City Defendants' authorities suggests that plaintiff cannot seek damages for any additional injuries he may be able to prove were caused by defendants' unconstitutional conduct.

In short, I am not persuaded that plaintiff's § 1983 claims must be dismissed either for lack of standing or because he cannot show

7

"deprivation of liberty" damages due to his still-valid conviction for the Gibson murder. And because the City Defendants raise no other serious arguments for dismissing these claims,[5] nor any independent argument for dismissing his remaining claims, their motion is denied.

I agree with defendant Toenings, however, that the Second Amended Complaint does not articulate a sufficient factual basis for holding him individually liable under § 1983. Plaintiff identifies Toenings as "a white sergeant with the CPD, Pochoardo's supervisor, [who] acted under the color of law and within the scope of his employment with Defendant, City of Chicago." SAC at ¶ 16. None of the SAC's substantive allegations attribute any act or omission to defendant Toenings, and indeed, the next his name appears in the complaint is in the "wherefore" clause of Count XI—plaintiff's state law claim for vicarious liability. That is an insufficient basis for inferring that Toenings was personally responsible for the constitutional injuries plaintiff alleges.

"The doctrine of respondeat superior does not apply to § 1983 actions; thus to be held individually liable, a defendant must be

---

[5] They do argue that dismissal of plaintiff's coerced confession claim must be dismissed because the conduct on which this claim is based is insufficiently "conscience-shocking," but this argument lacks merit. Defendants cite cases such as *Cairel v. Alderden*, 821 F.3d 823, 833 (7th Cir. 2016), in which the Seventh Circuit held that "insulting, threatening, lying to, or making false promises to a suspect" do not violate substantive due process. Mot., ECF 103 at 13-14 (citing). Setting aside that Mr. Allen does not assert a violation of *substantive* due process, I have no trouble concluding that a reasonable fact-finder could conclude that insults, threats, and the like are indeed conscience-shocking when used to coerce a suspect *known to be innocent* to confess to a crime.

personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Nothing in the SAC suggests that Toenings "caused or participated in" the violation of plaintiff's constitutional rights, *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir. 1986), nor does it offer any factual basis for inferring that Toenings, as a supervisor, knew about, condoned, facilitated, or turned a blind eye to the conduct plaintiff attributes to others. *Cf. Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988) (supervisors liable where evidence suggested they "had known every false step taken by the subordinate officers, had approved every false step, and had done their part to make the scheme work."). At bottom, the complaint asserts liability against Toenings based on nothing more than his supervision of Pochordo.

Plaintiff insists that because he attributes conduct to the "Police Officer Defendants" as a group, he satisfies the lenient pleading standards of Fed. R. Civ. P. 8. It is true that such "group pleading" may be adequate to plead personal involvement where the plaintiff specifies that his allegations are directed to each group member. *See, e.g., Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). But here, the allegations directed to the "Police Officer Defendants" are among the SAC's most generic, amounting to little more than formulaic recitations of plaintiff's claims. For example, plaintiff alleges that these defendants "forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and which were used against

9

him in criminal proceedings, in violation of his rights secured by the Fifth and Fourteenth Amendments," SAC at ¶ 145; "deprived Plaintiff of his constitutional right to due process and a fair trial," *id.* at ¶ 164; and "deliberately withheld exculpatory evidence," *id.* at ¶ 165. Allegations such as these do not meaningfully suggest that Toenings was personally involved in the alleged constitutional deprivations.

In a few instances, plaintiff asserts that the "Police Officer Defendants" engaged in specific unlawful conduct, such as when he alleges that they "used false evidence that they had manufactured in order to accuse Plaintiff of criminal activity and cause the institution and continuation of criminal proceedings against Plaintiff, without probable cause." SAC at ¶ 155. But elsewhere in his complaint, plaintiff describes this conduct more fully, and he specifically attributes it to other officers—most often defendant Pochordo. Accordingly, while these allegations may go beyond boilerplate recitations of plaintiff's claims, they likewise fail to suggest that Toenings was personally involved in the constitutional violations alleged. His motion to dismiss is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: February 13, 2023

10