# EXHIBIT G

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ALFREDO GONZALEZ, | |
| Plaintiff, | Case No. 22 CV 6496 |
| v. | District Judge Kness |
| REYNALDO GUEVARA, ET AL., | Magistrate Judge McShain |
| Defendants. | |

## ORDER

Pending before the Court are plaintiff's motion for entry of a protective order [86], the City defendants' motion for entry of a confidentiality order [92],[1] and plaintiff's motion to quash defendants' subpoena seeking plaintiff's recorded phone calls [99]. The motions are fully briefed. [94-95, 98-99, 108-09]. For the following reasons, plaintiff's motions are denied and defendant's motion for entry of a confidentiality order is granted in part and denied in part.

## I. Confidentiality Order

Each side has moved the Court to enter its preferred version of a confidentiality order governing the designation, production, and use of confidential information produced during discovery. The primary dispute concerns how the confidentiality order should treat the Chicago Police Department's Complaint Register (CR) files. A CR file "is created whenever a person complains about a Chicago police officer. CR files may contain the City's investigation of and response to the complaint, and may also reflect any discipline or other corrective action taken against an officer." *Prince v. Kato*, Case No. 18-cv-2952, 2019 WL 3554533, at *1 (N.D. Ill. Jul. 30, 2019); *see also* [86] 2. In *Kalven v. City of Chicago*, the Illinois Appellate Court held that CR files are not exempt from disclosure under Illinois's Freedom of Information Act (IFOIA) and thus are generally available to the public at large. 7 N.E.3d 741, 747-48 (Ill. App. Ct. 2014), *overruled in part and on unrelated grounds*, 106 N.E.3d 1016 (Ill. 2018).

Plaintiff argues that the Court should enter the Northern District of Illinois's Model Confidentiality Order, which does not explicitly address CR files. Under the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

Model Order, however, "[i]nformation or documents that are available to the public may not be designated as Confidential Information." Northern District of Illinois Form 26.2 Model Confidentiality Order, at ¶ 2. Because Illinois law treats CR files as public documents, plaintiff contends that defendants cannot establish good cause to treat them as confidential in this litigation. [86] 6-7, 9. Plaintiff also argues that classifying CR files as confidential will impede his ability to prosecute this case. This is so, plaintiff maintains, because if the CR files are treated as confidential he will not be able to (1) use the CR files to develop Rule 404(b) and *Monell* evidence by speaking with third parties about, and showing them the contents of, the CR files; (2) compare the CR files produced in this case with those produced in other cases involving the same defendants to ensure the production is complete; and (3) share the CR files with other law firms that are litigating police-misconduct cases against the City. [86] 14-15.

Plaintiff raises two other issues with defendants' proposed order. First, defendants' proposal defines "confidential information" to include all "employment, disciplinary, or other information that is of a sensitive or non-public nature" for all parties and non-parties to the case. [92-1] 3-4. Plaintiff contends that this language improperly "leaves it up to the producing party's subjective determination whether a particular document is confidential." [86] 16. Plaintiff also observes that the Model Order already protects many of these categories of information from disclosure, such as personal identity information and personnel or employment records of non-parties. [*Id*.]. Second, plaintiff objects to paragraph 6 of defendants' proposed order, which authorizes a party responding to a discovery request to redact:

> social security numbers, dates of birth, and information covered by the Juvenile Court Act, as well as, for security reasons, all references to a current or former individual state's attorneys and police officer's confidential information about him/herself and his/her family, including but not limited to, social security number, home address, home and cellular telephone number(s), personal email address(es), the names of family members and the names of insurance beneficiaries.

[92-1] 8. Plaintiff argues that this provision would give defendants a tactical advantage because, as the party redacting CR files, defendants would have "unilateral access to identifying information of witnesses and thus can identify and locate those witnesses, while Plaintiff does not have the information and cannot locate the witnesses." [86] 17. Plaintiff further contends that the Juvenile Court Act (JCA) does not create a basis to redact information relating to juvenile victims and witnesses. [*Id*.] 17-18.

Defendants respond that there is good cause to designate the CR files as confidential for purposes of this litigation. Defendants do not dispute that CR files are generally treated as public documents under Illinois law, nor do they dispute that

anyone can request these documents via the IFOIA process. Rather, defendants contend that designating the CR files as confidential in this litigations is necessary to protect them from an undue production burden that will arise if the CR files are not so designated. [92] 13-15. Defendants observe that, while CR files can be obtained by the public at large, the IFOIA still requires that certain information in CR files be redacted before they can be publicly disclosed. *See Kalven*, 7 N.E.3d at 748. Accordingly, if the CR files are not designated as confidential, defendants will have to produce two sets of CR files: one with minimal redactions required by the terms of the confidentiality order, and a second with the additional redactions required by the IFOIA. Defendants argue that they should not have to bear this burden, which they contend will be substantial and time-consuming, particularly when plaintiff's main purpose in seeking the IFOIA-redacted CR files is to facilitate the dissemination of these materials to the public at large. [92] 14-15; [95] 6-7.

Regarding plaintiff's objection to the proposed definition of "confidential information," defendants maintain that there is "no public interest in City employees' personnel files, employment applications, disciplinary records, performance evaluations or request for medical leave," such that the potential harm to the individuals whose files are at issue outweighs the importance of the public disclosure of such information. [95] 12. As for the redaction provision, defendants contend that it is necessary to further shield highly sensitive information contained in the CR files, such as the social security numbers, addresses, and contact information for police officers and prosecutors. [*Id.*] 13-14. Should plaintiffs require additional identifying information to locate certain witnesses who appear in the CR files, defendants have offered to meet-and-confer with plaintiff's counsel to assist in locating such witnesses. [*Id.*] 14; [97] 5. Finally, defendants contend that the JCA "requires that certain information as well as the identities of juveniles and others related to juveniles be redacted, even in documents that are considered confidential." [95] 14.

## A.    Legal Standard

"Federal Rule of Civil Procedure 26(c) authorizes the Court to issue a protective order specifying the terms or forbidding the disclosure of discovery." *White v. City of Chicago*, No. 18 CV 1404, 2018 WL 11407550, at *1 (N.D. Ill. Oct. 24, 2018). Under Rule 26, the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Prince*, 2019 WL 3554533, at *1. "The party seeking protection from discovery bears the burden of presenting a particular and specific demonstration of fact as to the need for that protection." *City of Rockford v. Mallinckrodt ARD, Inc.*, Case Nos. 17 CV 50107 & 20 CV 50056, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020) (internal quotation marks omitted). "To determine whether a party has shown good cause for the requested protective order, the district court must balance the parties' interests,

taking into account the importance of disclosure to the nonmovant and the potential harm to the party seeking the protective order." *Prince*, 2019 WL 3554533, at *1.

## B. The CR Files Will Be Designated Confidential.

As the summary of the parties' arguments demonstrates, "the issue here is not whether Plaintiff can receive CR files. Rather, it is how Plaintiff should obtain CR files that they may publicly release: through discovery proceedings governed by the Federal Rules of Civil Procedure or through a separate non-judicial request made pursuant to IFOIA." *Prince*, 2019 WL 3554533, at *3 (internal emphasis omitted). This issue has been the subject of numerous decisions in this District, and different outcomes have been reached in different cases. *See, e.g.*, *Williams v. City of Chicago*, Case No. 22 C 1084, 2022 WL 10105656, at *4-5 (N.D. Ill. Oct. 17, 2022) (refusing to designate entire CR files as confidential); *Prince*, 2019 WL 3554533, at *3-4 (entering confidentiality order treating CR files as confidential); *White*, 2018 WL 11407550, at *1-2 (same).

Having reviewed the parties' briefs, their proposed protective orders, and the relevant case law–and in the exercise of its "extremely broad discretion in controlling discovery," *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013)–the Court finds good cause to treat the CR files produced during discovery as confidential.

First, the Court gives significant weight to defendants' claim that producing two sets of CR files amounts to an undue–and, as far as this litigation is concerned, unnecessary–burden. In this case, plaintiff has requested documents "relating to every instance in which an employee of the Chicago Police Department was subject to any form of discipline for failing to follow policies or procedures" governing their job duties, including memorializing developments in an investigation, conducting and memorializing interrogations and interviews, and disclosing exculpatory evidence. *See* [95-1] 51, at ¶ 48. Plaintiff has also requested "[a]ll Documents related to any complaint against any Chicago Police Department officer in the ten years prior to (1980) and ten years after (2000) the Wiley Murders Investigation[.]" [*Id.*] 52, at ¶ 51. According to defendants, "[p]roduction of anything even close to what Plaintiff has requested would result in a new production of likely hundreds of thousands of pages that will have to be double-redacted" in accordance with IFOIA. [95] 9. Defendants have not provided an affidavit or declaration to support this claim, but the Court nevertheless credits it based on the parties' representations about a similar production of CR files that occurred in *Sierra v. Guevara*, Case No. 18 CV 3029, in which lawyers on both sides of this litigation participated. Plaintiff in that case sought a more limited set of CR files: those initiated against detectives assigned to Area 5 between 1991 and 1995. *See* [95] 9; [97] 4. The magistrate judge rejected a request to designate the CR files as confidential, and defendants were therefore required to produce two sets of CR files: one containing minimal redactions required by the confidentiality order and a second set of CR files with IFOIA redactions. *See*

[109] in *Guevara*, Case No. 18 CV 3029. According to the defendants, "it took the City around 200 hours to double redact and produce 5 years' worth of CR files for CRs initiated against Area 5 detectives only." [97] 4. In this case, however, plaintiffs seek at least twenty years' worth of CR files that were initiated against all Chicago Police Department officers, as opposed to the five years' worth of CR files concerning only the Area 5 detectives in *Sierra*. The Court therefore finds that, absent a protective order designating the CR files as confidential, defendants will incur a massive burden, far in exceeding the 200 hours of attorney time spent making the redactions in *Sierra*, in responding to the request for CR files and redacting them in compliance with IFOIA. *See White*, 2018 WL 11407550, at *2 ("And to require the defendants to apply the more extensive redactions [required by IFOIA] before producing the [CR files] to the plaintiffs . . . would serve no purpose except to impose an unnecessary burden on the defendants and frustrate the efficient exchange of discovery.").

Second, and relatedly, it is not necessary to subject defendants to this production burden to ensure that plaintiff has access to the CR files and can use them to prosecute his case. Plaintiff claims that he has a "real need for those documents not to be treated as confidential" because he anticipates speaking to third parties about the CR files and showing the files to third parties and comparing the CRs produced in this case to those produced in prior cases to ensure the completeness of the production. But plaintiff can accomplish these tasks with the minimally-redacted version of the CR files that defendants will disclose. The protective order proposed by defendants allows the parties to disclose the CR files to third parties, provided it is reasonably necessary to do so as part of the investigation into the case and the third party agrees not to retain copies of the CR. *See* [92-1] 6-7, at ¶ 5(b)(9). Likewise, plaintiff can use "copies of CR files obtained confidentially within this litigation" to compare those files "to productions in other lawsuits to ensure that the City's production in this case is complete[.]" *Prince*, 2019 WL 3554533, at *4. All that the confidential restriction will prevent plaintiff from doing is disseminating the CR reports to the public at large, which is not a core discovery purpose in any event. *See White*, 2018 WL 11407550, at *1 ("Discovery is made available to allow the parties to gather information relevant to their claims and defenses, not to vindicate the public's right to access public records, and certainly not to . . . impose unnecessary burdens on a party.").

Third, the Court recognizes that "disclosure and public scrutiny" of CRs "is important because these documents concern the important public service of policing." *Prince*, 2019 WL 3554533, at *3. But designating the CR files confidential for purposes of this litigation will not prevent plaintiff or anyone else from obtaining the CRs. As the court recognized in *White*, "IFOIA–not dissemination [of CR files] by plaintiffs' counsel–provides the appropriate mechanism through which to attempt to gain access to those records." 2018 WL 11407550, at *3. Accordingly, "the importance of public disclosure" of CR files "through *this* litigation is undermined where the City has represented that it would follow *Kalven* and disclose redacted versions of these

CR files to anyone who submits a request through the non-judicial IFOIA process." *Prince*, 2019 WL 3554533, at *3 (emphasis in original).

In sum, the City defendants stand to incur a massive production burden if the CR files are not designated confidential. Plaintiff, by contrast, will not suffer any harm related to this litigation if the files are designated confidential because the protective order permits plaintiff to use the CR files when necessary to develop his case. Finally, nothing in the confidentiality order prevents the public at large from obtaining any CR file at issue in this case because they files remain accessible via the IFOIA process. For these reasons, the Court finds that defendants have established good cause to designate the CR files as confidential, and the Court will enter a confidentiality order that classifies the CR files as confidential.

## C. Definition of "Confidential Information"

Plaintiff objects to the italicized language in the definition of "Confidential Information" in Paragraph 2 of defendants' proposed confidentiality order:

> (h) *employment, disciplinary, or other information that is of a sensitive or non-public nature* regarding plaintiffs, defendants, non-party witnesses, and non-party employees of the City of Chicago and Cook County State's Attorney's Office. Such information includes, but is not limited to, private information in personnel files, such as employment applications, performance evaluations, tax forms, requests for medical leave and the like as well as personal and family information of police officers and state's attorneys, including residential information[.]

[92-1] 3, at ¶ 2(h).

The Court observes that an identical definition of "Confidential Information" was included in the confidentiality order entered in *Prince*. *See* 2019 WL 3554533, at *4. And for the most part, the Court agrees with defendants that this provision is warranted. Although the Model Order's definition of confidential information includes "personal identity information" and personnel or employment records of third parties, the Court sees no harm in defendants' inclusion of more specific language and specific examples of information that falls within these categories. But the Court shares plaintiff's concern to the extent that Paragraph 2(h) defines "Confidential Information" as "other information that is of a sensitive or non-public nature." This is a broad and, as far as defendants' motion is concern, unjustified expansion of the definition that could potentially allow defendants to designate a wide variety of information as confidential based on a subjective determination that such information is "sensitive" or has a "non-public nature." Because defendants have not established good cause for this expanded definition of "Confidential Information," the

phrase "other information that is of a sensitive or non-public nature" must not be included in the confidentiality order.

### D.     Redaction Power

Finally, plaintiff objects to Paragraph 6 of defendants' proposed order, which authorizes the producing party:

> to redact from all documents . . . produced in discovery social security numbers, dates of birth, and information covered by the Juvenile Court act, as well as for security reasons, all references to a current or former individual states' attorney and police officer's confidential information about him/herself and his/her family, including but not limited to, social security number, home address, home and cellular telephone number(s), personal email address(es), the names of family members and the names of insurance beneficiaries.

[92-1] 8, at ¶ 6.

The Court overrules plaintiff's objection that the redacting power would give defendants an unfair advantage in terms of identifying, locating, and speaking with witnesses mentioned in the CR files. As defendants observe in their reply brief, "[i]n the past, defendants have informed Plaintiff's law firm in other cases that if they need someone's information from certain documents where personal identifying information is redacted, they can simply ask and the City would work with them to identify the contact information they need." [97] 5. Defendants have also signaled their willingness to work with plaintiff on a case-by-case basis to provide additional identifying information for witnesses who The Court expects that the defendants will similarly work cooperatively and in good faith with plaintiff's counsel if such a need arises in this case. *See Prince*, 2019 WL 3554533, at *5 (accepting City's representation that it would meet and confer with plaintiff regarding need for additional contact information to locate witnesses whose identifying information had been redacted from CR files).

Regarding the proposed redactions of "information covered by the Juvenile Court Act," the parties' cursory briefing on this issue does not permit the Court to make an informed decision whether, and the extent to which, such material must be redacted when it is included in a record that is designated "confidential" and produced during civil litigation in federal court. Plaintiff argues that "state statutes typically do not provide a basis to withhold information in federal litigation" [86] 17, but he does not grapple with specific language in the JCA suggesting that certain juvenile records and information about juvenile crime victims cannot be disclosed. *See* 705 ILCS 405/1-7(A) ("[a]ll juvenile law enforcement records which have not been expunged are confidential and may never be disclosed to the general public or

otherwise made widely available"); 705 ILCS 405/905(2) ("Information identifying victims and alleged victims of sex offenses, shall not be disclosed or open to public inspection under any circumstances."). For their part, defendants do not meaningfully respond to plaintiff's point that the JCA's definition of "juvenile law enforcement record" does "not include *records identifying a juvenile as a victim, witness, or missing juvenile* and any records created, maintained, or used for purposes of referral to programs relating to" certain diversion programs referenced elsewhere in the statute. 705 ILCS 405/1-3(8.2) (emphasis added). Given that definition, it may be that references to a minor witness or a minor victim of a crime (other than a sex offense) need not be redacted since such information is arguably not covered by the JCA.

The Court finds that defendants have not established good cause to permit them to redact from the CR files "information covered by the Juvenile Court Act," and the Court denies defendants' motion on this score without prejudice to renewal if the parties cannot resolve this dispute after further meet-and-confer negotiations. Without a more precise definition or understanding of the phrase "information covered by the Juvenile Court Act," and given that the JCA does not extend to all "records identifying a juvenile as a victim, witness, or missing juvenile," there is a non-trivial risk under defendants' proposed order that some information not shielded by the JCA will nevertheless be redacted from the CR files. In so ruling, the Court recognizes defendants' point that similar language has been included in confidentiality orders in other cases involving defendant Guevara. *See* [95] 15 (listing several such cases). But it does not appear that plaintiffs in those cases made a specific objection to the JCA redaction provision, nor does it appear that any of those courts analyzed the kind of objection plaintiff makes here. Accordingly, the parties must meet and confer on the extent to which records and/or information relating to juveniles that appears in the CR files must or should be redacted, and the parties should consider, among other factors, (1) the statute's prohibition on disclosure of the identities of juvenile victims of sex offenses, (2) the statute's definition of "juvenile law enforcement record," and (3) whether defendants can address plaintiff's concerns about the propriety of redactions by citing a specific statutory provision that defendants contend warrants the redaction(s).

For the foregoing reasons, plaintiff's motion for entry of a protective order is denied and defendants' motion for entry of a confidentiality order is granted in part and denied in part as provided herein. Defendants shall provide clean and redlined copies of a confidentiality order that conforms to the rulings set forth above to the Court's proposed order inbox (Proposed_Order_McShain@ilnd.uscourts.gov) within seven days of the date of this order.

## II.     Motion To Quash

Defendants have subpoenaed the Illinois Department of Corrections (IDOC) for recordings of phone calls that plaintiff made while in custody "from March 1992-May 1992, August 1995-October 1995, May 2003, May 2006, December 2008-March 2013, October 2013, October 2016, June 2017, November 2017-February 2018, [and] August 2022." [99-1] 1. Plaintiff has moved to quash the subpoena, arguing that (1) the subpoena improperly invades his privacy interests in the recorded calls, (2) responding to the subpoena would impose a massive and undue burden on all parties to the case, (3) the calls at issue are not relevant to the parties' claims and defenses, and (4) the subpoena requires production of privileged information because plaintiff "likely . . . discuss[ed] the case" on these recorded phone calls with members of his defense team." [99] 8-12, 15. Defendants respond that (1) the calls are relevant because plaintiff testified that he discussed his innocence and Detective Guevara during these phone calls, (2) the burden of responding is not undue because defendants' subpoena is reasonably tailored and seeks only 305 calls, amounting to 150 hours of call time, (3) plaintiff has only a minimal privacy interest in the calls because he knew he was speaking on a recorded line, and (4) plaintiff waived any attorney-client privilege by speaking with his attorneys on a line he knew to be monitored. [108] 6-14.

### A.     Legal Standard

Civil Rule 45 provides that a party may issue a subpoena to command production of documents or other tangible material in a person's possession or control. Fed. R. Civ. P. 45(a). "The limits of production under a subpoena are essentially the same as the scope of discovery generally under Fed. R. Civ. P. 26, which provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *FireBlok IP Holdings, LLC v. Hilti, Inc.*, Case No. 19 CV 50122, 2021 WL 5283946, at *2 (N.D. Ill. Aug. 10, 2021) (internal quotation marks omitted). Rule 45 further provides that "the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected material" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).

### B.     Plaintiff Has Standing To Challenge The Subpoena.

"A party has standing to quash a subpoena issued by another party to the litigation and directed to a non-party in two instances: if the movant has a claim of privilege attached to the information sought or the subpoena implicates the movant's privacy interests." *Simon v. Northwestern Univ.*, Case No. 1:15-CV-1433, 2017 WL 66818, at *2 (N.D. Ill. Jan. 6, 2017). Here, the Court finds that plaintiff has "the minimal privacy interest necessary to challenge the subpoena." *Id.* Plaintiff was incarcerated within IDOC for more than thirty years before he was "exonerated" in

2022 and released from custody. [90] 1, 8. During his incarceration, plaintiff claims he had "no other way to maintain his relationships" than by "mak[ing] recorded phone calls" to friends and family members. [*Id.*] 8. And while plaintiff "may reasonably have expected prison officials or law enforcement to have access to recordings of his phone calls" made while in custody "because of security concerns inherent in managing prisons and prisoners, he may not have anticipated that parties to a civil proceeding would [also] be privy to those conversations." *Bishop v. White*, No. 16 C 6040, 2020 WL 6149567, at *3 (N.D. Ill. Oct. 20, 2020). Accordingly, plaintiff has "the minimum privacy interest the law requires for him to raise the arguments he now is raising before the Court." *Id.*; *see also Simon*, 2017 WL 66818, at *2.[2]

## C. Defendants' Subpoena Seeks Relevant Information And Is Not Overbroad.

"Where the subpoena is directed to a third-party but implicates a different individual's privacy interests, courts weigh the relevance of the information sought against the strength of that privacy interest rather than conduct the familiar assessment of how burdensome production would be on the third-party recipient of the subpoena in terms of time and volume of information." *Bishop*, 2020 WL 6149567, at *4. Here, because plaintiff knew–and does not dispute he knew–that his phone calls were made on a recorded line, plaintiff has only a "minimal" privacy interest in the content of those calls. *Russell v. City of Chicago*, No. 20-cv-1163, 2022 WL 294765, at *2 (N.D. Ill. Feb. 1, 2022); *see also Rodriguez v. City of Chicago*, Case No. 18-cv-7951, 2021 WL 2206164, at *2 (N.D. Ill. Jun. 1, 2021) (characterizing privacy interest as "relatively light" because "incarcerated individuals are aware their calls may be recorded and do not have the same privacy expectations in their phone recordings as they would outside a jail setting"). Because plaintiff's privacy interest is minimal, the Court finds that "the burden [defendants'] subpoena imposes on those interests is not substantial." *Russell*, 2022 WL 294765, at *2.

The Court also finds that defendants' subpoena is reasonably targeted at conversations that are likely to contain relevant information. As defendants observe, plaintiff testified at a deposition in a related case that he discussed his innocence with friends and family during phone calls that he made while incarcerated, and that

---

[2] Defendants suggest that plaintiff does not have standing to challenge the subpoena on burden grounds. Defendants rely on two cases–*Parker v. Four Seasons Hotel, Ltd.*, 291 F.R.D. 181 (N.D. Ill. 2013) and *Liebich v. Delgiudice*, No. 20 C 2368, at [134] (N.D. Ill.)–that do address whether a party whose privacy interests allow him to challenge a third-party subpoena may also raise a burden objection to the subpoena. The Court need not definitively resolve this issue because, even assuming *arguendo* that plaintiff can raise a burden objection, the Court finds below that such an objection fails. In any event, the Court has discretion to construe plaintiff's motion to quash as a motion for a protective order, and in that posture the Court could properly entertain a burden objection to the third-party subpoena. *See Hannon c. City of Prospect Heights*, Case No. 18 C 2475, 2021 WL 9909725, at *2 (N.D. Ill. Jun. 10, 2021)

he also told his family and friends "about Detective Guevara." [108-2] 14-15, at 229:5-230:19. Furthermore, several witnesses whom plaintiff disclosed on his Rule 26(a)(1) disclosures are listed in his IDOC Inmate Telephone Number List Requests. *Compare* [108-6] *with* [108-13] 3-13. To be sure, defendants cannot establish with certainty which of these calls, if any, will prove relevant, but such certainty is not required to undertake this discovery. "Discovery is not a guarantee of success; it is not a matter of mathematics and equations in which certainty and exactness play central roles. It is, by its very nature, an enterprise with uncertain results and no assurance of ultimate success." *Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 3231726, at *2 (N.D. Ill. Jul. 29, 2021). But given plaintiff's testimony and the overlap between the initial disclosures and plaintiff's IDOC records, the Court finds that there is "evidence already discovered indicating that the recordings would probably document something relevant," such that defendants' subpoena should not be quashed as an improper fishing expedition. *DeLeon-Reyes v. Guevara*, No. 18-cv-1028, 2020 WL 705944, at *5 (N.D. Ill. Dec. 2, 2020).

Furthermore, and contrary to plaintiff's representation that the subpoena seeks "recordings of every single one of Plaintiff's private and personal phone calls received or made . . . for a total of six years during his 30-year incarceration" [99] 2, defendants have narrowed the subpoena and seek only "305 recorded calls, totaling less than 150 hours[.]" [108] 2. Defendants contend that these calls were made in "the months surrounding significant events in Gonzalez's and [his codefendant's] underlying criminal cases[.]" [*Id.*] 3 n.3. While the Court does not mean to suggest that the burden of producing, reviewing, and transcribing these calls is minimal, the Court rejects plaintiff's argument that the burden is "undue," given that plaintiff's privacy interests are minimal and there is a plausible basis to think the recorded calls may contain relevant information.

Finally, the Court overrules plaintiff's objection that the subpoena may require the production of privileged communications between plaintiff and his attorneys. Plaintiff's objection ignores the distinction, recognized in other cases, between an inmate's ability to schedule unmonitored calls with his attorney and an inmate's decision to speak with another person, including an attorney, over the prison's monitored and recorded lines. As the court observed in *Simon*, "IDOC's website unequivocally states that *unless a call is arranged as a private attorney call*, all calls are recorded." 2017 WL 66818, at *5 (emphasis added). Plaintiff does not deny that he knew he could arrange calls with his attorneys on an unrecorded line, and he does not contend that defendants' subpoena–which targets only recorded calls, *see* [99-1] 1–requires production of any unmonitored calls with his legal team. Rather, plaintiff contends that he was "likely forced to discuss the case with members of his defense team *on recorded lines*." [99] 15 (emphasis added). The law is clear, however, that a prisoner's calls with his attorneys are not privileged if they take place over a line that the prisoner knows or has been told is monitored. *See United States v. Tiner*, Case No. 20-CR-30166-SPM-1, 2022 WL 1289353, at *2 (S.D. Ill. Apr. 29, 2022) ("the

11

attorney-client privilege does not protect Tiner's choice to speak to his attorneys on the telephone knowing that the calls were being recorded and monitored simply because it was more convenient than adhering to the process for scheduling a confidential discussion"); *Russell*, 2022 WL 294765, at *3 n.2 (concluding, in dicta, that "the attorney-client privilege is waived when individuals speak with their attorneys on phone calls they know are being recorded"); *Pursley v. City of Rockford*, Case No. 18 CV 50040, 2020 WL 1433827, at *5 (N.D. Ill. Mar. 24, 2020) (because plaintiff "could not reasonably expect that his conversations with his attorneys on recorded prison telephone lines would be confidential," plaintiff "waived his attorney-client privilege by knowingly communicating with his attorneys on a recorded line"); *Simon*, 2017 WL 66818, at *6 ("in the event Simon made any phone calls with his attorney on a recorded line [while incarcerated], he waived any claim of privilege with respect to those calls"). Although there does not appear to be a Seventh Circuit decision directly on point, that court has held that the marital-communications privilege does not apply to a phone call between spouses that occurs on a recorded prison line. *See United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998). The logic of that decision supports a rejection of plaintiff's privilege claim here, and indeed has been relied on by many of the cases cited above. Because plaintiff had the ability to schedule unmonitored calls with his attorneys, and because those calls are outside the ambit of defendants' subpoena, the Court rejects plaintiff's privilege objection.

For these reasons, plaintiff's motion to quash is denied.

## Conclusion

For the reasons set forth above, plaintiff's motions for entry of a protective order [86] and to quash defendants' subpoena seeking plaintiff's recorded calls [99] are denied. Defendants' motion for entry of a confidentiality order [92] is granted in part and denied in part as provided herein. Defendants shall provide clean and redlined copies of a confidentiality order that conforms to the rulings set forth in this order to the Court's proposed order inbox (Proposed_Order_McShain@ilnd.uscourts.gov) within seven days of the date of this order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: November 15, 2023**

12